# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: A.S.-1

No. 16-0549 (Ohio County 15-CJA-103)

**FILED**

**November 14, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father A.S.-2, by counsel Richard W. Hollandsworth, appeals the Circuit Court of Ohio County's May 2, 2016, order terminating his parental rights to A.S.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Joseph J. Moses, filed a response on behalf of the child also in support of the circuit court's order and a supplemental appendix. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in denying his motions for improvement periods and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2015, the DHHR filed an abuse and neglect petition against petitioner and the child's mother, T.S. According to the petition, the mother abused A.S.-1 and the other children in the home by chronically abusing drugs and allowing other drug users, including some with violent criminal histories, to stay in the home. As to petitioner, the DHHR alleged that he was incarcerated after pleading guilty to delivery of a controlled substance and abused his biological child, A.S.-1, when he failed to provide for the child physically, emotionally, or financially.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we will refer to them as A.S.-1 and A.S.-2, respectively, throughout the memorandum decision. Finally, the Court notes that the proceedings below concerned additional children that are not petitioner's biological children. Petitioner raises no assignment of error in regard to these children on appeal. Accordingly, our holding in this memorandum decision does not concern the circuit court's rulings regarding these children.

1

During an adjudicatory hearing in October of 2015, petitioner filed a written stipulation to the petition's allegations. As such, the circuit court adjudicated him as an abusing parent.[2] Thereafter, petitioner filed a motion for a post-adjudicatory improvement period. In November of 2015 and January of 2016, the circuit court held hearings regarding petitioner's motion. During the hearings, the circuit court was also presented with records confirming petitioner's criminal history, including several convictions for violent crimes and drug offenses. Additionally, both petitioner and his parole officer testified that petitioner might be paroled in May of 2016. Petitioner further testified that he would comply with the terms of an improvement period and presented several certificates of completion from rehabilitative programs completed during his various incarcerations. Some of the programs addressed parenting and drug abuse issues. However, petitioner also admitted that some of the programs were completed during a prior incarceration and that he had returned to a life of crime and substance abuse upon his release. Petitioner also testified to his history of repeated parole violations and rule infractions while incarcerated. Further, petitioner testified that he had two older children who were raised by other individuals as a result of his repeated incarcerations. Additionally, the circuit court was presented with the reports resulting from petitioner's various psychological evaluations that indicated a poor prognosis for improvement and a likelihood of reoffending. In February of 2016, the circuit court issued an order denying petitioner's motion.

In March of 2016, the circuit court held a dispositional hearing. During the hearing, petitioner moved for an improvement period as disposition, although he presented no evidence in support. Petitioner also moved the circuit court to defer its decision until his next parole hearing, scheduled for April of 2016, which the circuit court agreed to do by asking for proposed findings of fact and conclusions of law so that it could render its decision by order after the parole hearing. The circuit court noted, however, that even if petitioner were paroled, both the DHHR and the guardian would still oppose an improvement period based upon his long history of repeated criminal offenses and drug use upon his release from incarceration. Following the dispositional hearing, petitioner was paroled on April 14, 2016. However, in its dispositional order entered on May 2, 2016, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination of petitioner's parental rights was necessary for the child's welfare. As such, the circuit court terminated petitioner's parental rights. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]The circuit court technically adjudicated petitioner as "an abusive and neglectful parent" and found that A.S.-1 was an "abused and neglected child." However, West Virginia Code § 49-1-201 defines an abusing parent as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Because the definition of "abusing parent" encompasses parents who have been adjudicated of abusing or neglecting a child, and because West Virginia Code § 49-1-201 does not contain a definition for "neglectful parent," we will use the term "abusing parent" in this memorandum decision.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, the Court finds no error in the circuit court's denial of petitioner's motions for a post-adjudicatory improvement period or an improvement period as disposition. According to petitioner, "each reason for terminating [his] parental rights stems from his incarceration" and his release on parole remedied those issues such that he was entitled to an improvement period. Petitioner further argues that he testified to his willingness to comply with services during an improvement period and also to his history of completing rehabilitative programs while incarcerated. According to petitioner, this evidence was sufficient to satisfy his burden to obtain an improvement period. The Court, however, does not agree. Importantly, petitioner's argument that the reasons for terminating his parental rights stemmed from his incarceration is misplaced and does not accurately reflect the record. At disposition, the circuit court specifically found that termination was based on petitioner's "propensity for criminal activity, his involvement with drugs, his violent tendencies, [and] his inability to provide for his child's needs." As such, it is clear that petitioner's release on parole did not remedy the underlying conditions of abuse and neglect present in this matter.

Moreover, while his completion of rehabilitative programs while incarcerated is laudable, petitioner ignores the fact that he completed many of these programs while previously incarcerated. Further, petitioner ignores the fact that although these services were designed to remedy issues with drug abuse, he failed to benefit from the same. Specifically, the record on appeal shows that petitioner admitted that he completed many of these courses during his last incarceration, but that he returned to committing crimes and abusing drugs upon his release. Ultimately, despite the services he received, petitioner was again incarcerated for delivery of a controlled substance. In fact, petitioner testified to having previously undergone inpatient drug rehabilitation in order to avoid revocation of parole, but ultimately relapsing and violating his parole prior to completing the program. This evidence clearly shows petitioner's inability to comply with services offered to remedy the underlying conditions of abuse and neglect.

Pursuant to West Virginia Code §§ 49-4-610(2)(B) and (3)(B), a circuit court has discretion to grant an improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period."

Indeed, we have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 778 S.E.2d 338 (2015) (stating that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the parent/respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004). While it is true that petitioner testified to his willingness to comply with the terms and conditions of an improvement period below, the evidence overwhelmingly indicated that petitioner would not be able to comply with such terms or implement any changes sufficient to remedy the conditions of abuse and neglect.

As noted above, petitioner testified to an extensive history of rehabilitative programs that failed to remedy the conditions of abuse and neglect. Moreover, petitioner's psychological evaluations indicated a prognosis of "guarded" in terms of his improvement, based upon his "violent and aggressive legal infractions, history of substance abuse, problems with anger control, psychological history, history of institutional misbehavior . . . , lapses in social judgment, and lack of insight into the nature of and circumstances surrounding his behaviors and attitudes that contribute to his legal problems." One evaluation specifically noted that petitioner "is likely at an increased risk to reoffend . . . ." As such, this evidence clearly established that petitioner was unlikely to fully comply with the terms of an improvement period. Moreover, we have previously held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. As such, we find no error in the circuit court's denial of petitioner's motions for improvement periods.

Finally, the Court finds no error in the circuit court's termination of petitioner's parental rights. In support of this assignment of error, petitioner argues that he "did nothing from the birth of the child . . . that could possibly be classified as an act of abuse or neglect." In support of this argument, petitioner attempts to distinguish his abuse and neglect of the child as "passive," due to his incarceration. According to petitioner, his "passive" abuse and neglect of the child is different from a parent in the home who engages in "active" abuse and neglect. The Court, however, does not agree with petitioner's characterization of the allegations of abuse and neglect in this case.

Pursuant to West Virginia Code § 49-1-201, a neglected child is one

4

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian.

According to petitioner, his abuse and neglect of the child was not active because he was prevented from financially supporting the child due to his incarceration. Petitioner further argues that family courts routinely suspend child support obligations for incarcerated parents because they cannot afford to meet those obligations. Petitioner's argument, however, fails to acknowledge that he failed to properly supervise the child because of his direct actions that led to his incarceration. As a result of his failure to properly supervise the child, A.S.-1 was subjected to drug use and inappropriate individuals, among other issues. As such, the Court notes that petitioner's actions in this proceeding constituted neglect under the statutory definition of that term.

Moreover, the circuit court was presented with sufficient evidence upon which to find that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Specifically, the circuit court admitted evidence of petitioner's lengthy criminal history that included convictions for battery, malicious wounding by use of a firearm, battery on an officer, unlawful assault, and domestic battery. Additionally, petitioner was convicted of wanton endangerment with a firearm in 1998 and was sentenced to a recidivist life sentence for that crime.[3] According to petitioner, the circuit court erred in relying on his criminal history in reaching disposition because it was entitled to consider only crimes governed by West Virginia Code § 49-4-605 and because this Court has held that "[a] biological parent of an infant child does not forfeit his or her parental right to the custody of the child merely by reason of having been convicted of one or more charges of criminal offenses." *Cecil T*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 2. The Court finds, however, that petitioner's argument is without merit.

To begin, the circuit court is not prohibited from considering crimes outside the scope of West Virginia Code § 49-4-605 in an abuse and neglect proceeding. To the contrary, petitioner's criminal history and, specifically, his history of reoffending, were highly relevant to the issues of abuse and neglect upon which the petition was based. The DHHR alleged that petitioner failed to provide for the child at issue due to his incarceration, and petitioner's lengthy criminal history was directly relevant to his propensity for committing additional crimes upon his release and being re-incarcerated. In fact, petitioner even admitted that he has two older children, now adults, that were raised by other individuals because of his repeated incarcerations. As such, it is clear that petitioner's history of repeated incarcerations was directly relevant to whether petitioner could correct the conditions of abuse and neglect at issue, namely remaining free of incarceration in order to properly provide for his child. Further, contrary to petitioner's argument on appeal, the circuit court did not find that he forfeited his parental rights because of his past convictions. Instead, the circuit court terminated petitioner's parental rights, in part, upon evidence that

---

[3]Petitioner was later released on parole.

petitioner would repeat his past behavior; that is to say that petitioner would reoffend and again be subject to incarceration while leaving his child without appropriate care.

More importantly, however, is the fact that the circuit court based termination of petitioner's parental rights upon many factors beyond petitioner's lengthy criminal history, including his equally lengthy history of substance abuse. According to the record on appeal, petitioner began abusing drugs and alcohol at the age of ten or eleven and his usage escalated over time. While petitioner argues that he obtained placement in the Miracles Happen rehabilitation program upon his release on parole and that the program will address his issues of substance abuse, the record on appeal also established that petitioner "has been through the Miracles Happen program in the past, but it has failed to remedy his problems, as he began to use drugs again thereafter." Accordingly, it is clear that the circuit court had overwhelming evidence upon which to base its findings that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of petitioner's parental rights was necessary for the child's welfare. According to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon such findings. As such, under the specific facts of this case we find no error in the circuit court terminating petitioner's parental rights instead of imposing a less-restrictive dispositional alternative.

For the foregoing reasons, we find no error in the circuit court's May 2, 2016, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: November 14, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II